## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| FTX TRADING LTD. and WEST REALM SHIRES SERVICES, INC., | |
| Plaintiffs, | |
| -against- | |
| MICHAEL BURGESS, HUY XUAN "KEVIN" NGUYEN, JING YU "DARREN" WONG, MATTHEW BURGESS, LESLEY BURGESS, 3TWELVE VENTURES LTD., and BDK CONSULTING LTD., | Adv. Pro. No. 23-50585 (JTD) |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Dated: November 20, 2023

**MORRIS JAMES LLP**
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
         tpakrouh@morrisjames.com

and

**CHAMBERLAINS LAW FIRM**
Stipe Vuleta (admitted *pro hac vice*)
Lachlan McBride (admitted *pro hac vice*)
Sebastian Brodowski (admitted *pro hac vice*)
Samuel Keys-Asgill (admitted *pro hac vice*)

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Level 12, 59 Goulburn Street
Sydney NSW 2000 Australia
Telephone: 02 9264 9111
E-mail: stipe.vuleta@chamberlains.com.au
       lachlan.mcbride@chamberlains.com.au
       sebastian.brodowski@chamberlains.com.au
       sam.keysasgill@chamberlains.com.au

and

Hugh Smith (admitted *pro hac vice*)
Level 8, 224 Bunda Street
Canberra City ACT 2601 Australia
Telephone: 02 6188 3600
E-mail: hugh.smith@chamberlains.com.au

*Counsel to the Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

TABLE OF ABBREVIATIONS .......................................................................... ix

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

I.    Overview of Alameda, FTX.com, and FTX.US. ....................................... 3

II.   Customers Agreed to FTX.com Terms of Service in Connection with their
      Activity on the FTX.com Platform. .......................................................... 4

III.  Customers Agreed to FTX.US User Agreement Terms in Connection with Their
      Activity on the FTX.US Platform. .............................................................. 6

IV.   The Defendants Were Customers and Employees of the FTX Group. .......... 7

      A.    Michael Burgess ............................................................................. 7

      B.    Huy Xuan "Kevin" Nguyen ........................................................... 7

      C.    Jing Yu "Darren" Wong ................................................................. 7

      D.    Matthew Burgess ........................................................................... 7

      E.    Lesley Burgess ............................................................................... 8

      F.    3Twelve Ventures Ltd. .................................................................... 8

      G.    BDK Consulting Ltd. ..................................................................... 8

V.    The FTX Group Files for Chapter 11 Bankruptcy. .................................... 8

LEGAL STANDARDS ........................................................................................ 9

ARGUMENT ....................................................................................................... 12

I.    The Complaint Should be Dismissed in Its Entirety Because the Named Plaintiffs
      Have No Enforceable Interest in the Funds They Seek to Recover ............. 12

II.   Counts I and II Should be Dismissed Because the Plaintiffs' Actual Fraudulent
      Transfer Claims Fail to State a Claim for Relief Against the Defendants. ..... 15

III.  Counts III and IV Should Be Dismissed in Their Entirety Because the Plaintiffs
      Failed to Plead Due Diligence in Accordance with Section 547(b). ............ 20

i

IV.    Counts III and IV Should Be Dismissed in Their Entirety Because the Plaintiffs Failed to Plead the Creation of An Antecedent Debt in Accordance with Section 547(b)(2). ................................................................................................ 21

V.    Section 546(e) of the Bankruptcy Code Bars Counts II–IV of the Complaint. ......... 23

    A.    The Digital Cryptocurrency Assets Were "Securities" ................................ 23

    B.    The Customer Withdrawals Were Made in Connection with a "Securities Contract" .................................................................................... 24

    C.    The Customer Withdrawals Were Made by and to "Financial Participants" .................................................................................................. 26

VI.    Counts V and VI of the Complaint Should be Dismissed for Failure to Adequately Allege a Primary Violation in Counts I–VI. .......................................... 27

CONCLUSION ................................................................................................................... 28

16417597/4

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Univ. Health Sci. v. Phila. Health Care Trust (In re Allegheny Health, Educ. & Rsch. Found.)*,
253 B.R. 157 (Bankr. W.D. Pa. 2000) ...............................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................10

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) .................................................................................................9

*Begier v. Internal Revenue Serv.*,
496 U.S. 53 (1990) .............................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................10

*Bos. Generating LLC Co. v. Road Poer Mgmt., LLC (In re Bos. Generating LLC)*,
617 B.R. 442, 479 (Bankr. S.D.N.Y. 2020) .......................................................................22

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ...............................................................................................12

*Burtch v. Huston (In re USDigital, Inc.)*,
443 B.R. 22 (Bankr.SD.N.Y 2011) ....................................................................................18

*Burtch v. Opus, L.L.C. (In re Opus E., L.L.C.)*,
480 B.R. 561 (Bankr. D. Del. 2012) ..................................................................................11

*Byers v. Intuit, Inc.*,
2009 WL 948651 (E.D. Pa. Mar. 18, 2009), *aff'd, 600 F.3d 286* .....................................10

*Carickhoff v. Cantor (In re Live Well Fin., Inc.)*,
2023 WL 4025816 (Bankr. D. Del. June 14, 2023) ............................................................17

*In re Celsius Network LLC*,
642 B.R. 497 (Bankr. S.D.N.Y. Sept. 1, 2022) ............................................................13, 14

*Commodity Futures Trading Commission v. Gelfman Blueprint, Inc.*,
2018 WL 6320653 (S.D.N.Y. Oct. 2, 2018) ......................................................................23

*In re Daily Bread Winddown, LLC*,
2022 Bankr. LEXIS 3078 ...................................................................................................27

*Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*,
2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ..............................................................11

*Giuliano v. Shorenstein Co. LLC (In re Sunset Aviation, Inc.)*,
    468 B.R. 641 (Bankr. D. Del. 2011) .................................................... 28

*Halperin v. Moreno (In re Green Field Energy Servs., Inc)*,
    2018 WL 6191949 (Bankr. D. Del. Nov. 28, 2018) ......................................... 13

*Harden v. Harrison (In re Harrison)*,
    627 B.R. 832 (Bankr. E.D. N.C. 2021) .............................................. 13

*Hechinger Inv. Co. of Del v. Fleet Retail Finance Group (In re Hechinger Inv.
    Co. of Del.)*,
    274 B.R. 71 (D. Del. 2002) ........................................................... 22

*Hill v. Hill (In re Hill)*,
    342 B.R. 183 (Bankr. D.N.J. 2006) ................................................. 18

*Holliday v. Credit Suisse Sec. (USA) LLC*,
    WL 4150523 (S.D.N.Y. Sept. 13, 2021) ............................................... 22

*In Securities and Exchange Commission v. Shavers*,
    2013 WL 4028182 (E.D. Tex. Aug. 6, 2013) ........................................... 23

*Indeck Maine Energy, L.L.C. v. ISO New England Inc.*,
    167 F. Supp. 2d 675 (D. Del. 2001) ................................................... 12

*Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys
    Therapeutics), Inc.*,
    2021 WL 5016127 (Bankr. D. Del. Oct. 28, 2021) ................................... 17, 18

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
    2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ..................................... 17

*James Cable, LLC v. Millennium Digital Media Sys., LLC (In re Broadstripe,
    LLC)*,
    435 B.R. 245 (Bankr. D. Del. 2010) .................................................. 10

*In re KB Toys Inc.*,
    736 F.3d 247 (3d. Cir. 2013) ......................................................... 27

*Kitchen v. Boyd (In re Newpower)*,
    233 F.3d 922 (6th Cir. 2000) ......................................................... 13

*Kravitz* v. *Samson Energy Co. (In re Samson Res. Corp.)*,
    625 B.R. 291 (D. Del. 2020) ....................................................... 23, 26

*Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*,
    650 B.R. 803 (D. Del. 2023) ..................................................... 9, 10, 15

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) *abrogated on other grounds, Humana, Inc. v.
    Indivior, Inc.*, 2022 WL 17718342 (3d Cir. Dec. 15, 2022) ............................ 11

iv

*In re Magnesium Corp. of America*,
    460 B.R. 360 (Bankr. S.D.N.Y 2011) ...............................................................24

*Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*,
    716 F.3d 736 (3d Cir. 2013).................................................................................27

*Miller v. Energy Star Records (In re DA Liquidating Corp.)*,
    622 B.R. 172 (Bankr. D. Del. 2020) ...................................................................22

*Miller v. SWZ Fin. II, LLC (In re United Tax Grp., LLC)*,
    2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018) ......................................11, 17

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy*,
    1980 WL 1057 (D. Del. Oct. 23, 1980) ...............................................................10

*In re Nat'l Serv. Indus., Inc.*,
    2015 WL 3827003 (Bankr. D. Del. June 19, 2015)..............................................18

*Off. Comm. of Unsecured Creditors of Champion Enters. Inc. v. Credit Suisse (In re Champion Enters., Inc.)*,
    2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010) ................................................9

*Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*,
    405 B.R. 527 (Bankr. D. Del. 2009) ............................................................*passim*

*OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*,
    325 B.R. 696, 699 (Bankr. D. Del. 2005) ...........................................................11

*Otis & Edwards, P.C. v. Barbara (In re Otis & Edwards, P.C.)*,
    115 B.R. 900 (E.D. Mich. 1990).........................................................................19

*Our Alchemy, LLC v. AnConnect, LLC (In re Our Alchemy), LLC*,
    2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ...........................................15

*Parkell v. Lyons*,
    2019 WL 1435885 (D. Del. Mar. 31, 2019) .......................................................10

*PennySaver USA Publ'g, LLC v. OpenGate Capital Mgmt., LLC (In re PennySaver USA Publ'g, LLC)*,
    602 B.R. 256 (Bankr. D. Del. 2019) ...................................................................15

*PennySaver USA Publ'g, LLC v. OpenGate Capital Mgmt., LLC (In re PennySaver USA Publishing, LLC)*,
    587 B.R. 445 (Bankr. D. Del. 2018) ...................................................................19

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*,
    998 F.2d 1192 (3d Cir. 1993)...............................................................................11

*Piazza v. Pacific Maritime Indus. Corp. (In re George G. Sharp, Inc.)*,
    2022 WL 1714178 (Bankr. S.D.N.Y. May 25, 2022).........................................22

v

*Picard v. Ida Fishman Rev. Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014)................................................................................... 24, 25

*Pinktoe Liquidation Trust v Charlotte Olympia Dellal (In Re Pinktoe
    Tarantula Ltd.)*,
    2023 WL 2960894 (Bankr. D. Del. Apr. 14, 2023) ........................................... 20

*Purpura v. JP Morgan Chase*,
    2018 WL 1837952 (D.N.J. Apr. 18, 2018) ....................................................... 10

*Rollaguard Sec., LLC v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*,
    591 B.R. 895 (Bankr. S.D. Fla. 2018)......................................................... 16, 19

*Ruddy v. U.S. Postal Serv.*,
    455 F. App'x 279 (3d Cir. 2011) ..................................................................... 12

*Samson Res.Corp. v. Samson Energy Co. ( In re Samson Res. Corp.)*,
    2022 WL 3135288 (Bankr. D. Del. 2022) .................................................. 26, 27

*Sharp International Corp. v. State Street Bank & Trust Co. (In re Sharp
    International Corp.)*,
    302 B.R. 760 (E.D.N.Y. 2003) ........................................................................ 19

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    505 B.R. 135 (S.D.N.Y. 2013)......................................................................... 26

*Snyder v. Biros (In re U Lock, Inc.)*,
    2023 WL 4678609 (Bankr. W.D. Pa. July 21, 2023)....................................... 13

*In re Sportco Holdings, Inc.*,
    2021 WL 4823513 (Bankr. D. Del 2021) ........................................................ 12

*Symonies v. Sobol (In re Sobol)*,
    545 B.R. 477 (Bankr. M.D. Pa. 2016) ............................................................. 11

*Talley v. Christiana Care Health Sys.*,
    2018 WL 4938566 (D. Del. Oct. 11, 2018) ....................................................... 9

*THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*,
    2016 WL 1599798 (Bankr. D. Del. Apr. 18, 2016)......................................... 21

*Trib. Co. Fraudulent Conv. Litig v. Citigroup Global Mkts. (In re Trib. Co.
    Fraudulent Conv. Litig.)*,
    10 F.4th 147 (2d Cir. 2021) ............................................................................. 16

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*
    429 B.R. 73 (Bankr S.D.N.Y. 2010)................................................................ 19

*TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post
    Confirmation Estate)*,
    305 B.R. 228 (Bankr. D. Del. 2004) ............................................................... 21

*United States v. Bankman Fried*,
   22cr-00673 (S.D.N.Y. 2022) ........................................................................ 4

*United States v. Whiting Pools, Inc.*,
   462 U.S. 198 (1983) ................................................................................... 13

*In re Voyager Digital Holdings, Inc.*,
   2022 WL 3146796 (Bankr. S.D.N.Y. Aug. 5, 2022) ..................................... 14

*In re Zambrano Corp.*,
   478 B.R. 670 (Bankr. W.D. Pa. 2012) ......................................................... 18

**Statutes**

6 *Del. C.* § 1304 ............................................................................................ 2, 15

11 U.S.C §§ 101–1532 ............................................................................ 2, 14, 25

11 U.S.C. §§ 101(22A)(A) ................................................................................ 26

11 U.S.C. § 502 ................................................................................... 2, 14, 27, 28

11 U.S.C. § 541 ............................................................................................... 13

11 U.S.C. § 544(a) .......................................................................................... 13

11 U.S.C. § 546(e) ..................................................................................... *passim*

11 U.S.C. § 547(b) ................................................................................. 20, 21, 22

11 U.S.C. § 547(g) ........................................................................................... 20

11 U.S.C. § 548(a)(1) ................................................................................ *passim*

11 U.S.C. § 550 ................................................................................... 2, 14, 27, 28

11 U.S.C. § 741(7) ....................................................................................... 24, 25

Unform Fraudulent Transfer Act ...................................................................... 17

**Other Authorities**

Fed. R. Bankr. P. § 7012 .................................................................................... 1

Fed. R. Civ. P. 8(a) ......................................................................................... 10

Fed. R. Civ. P. 9(b) ..................................................................................... 11, 15

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 9

*Financial Services*, April 23, 2023,
   https://www.sec.gov/news/testimony/gensler-testimony-house-financial-
   services-041823 .......................................................................................... 23

Yahoo Finance, FTX Token USD, *https://finance.yahoo.com/quote/FTT-USD/*
(last visited Nov. 18, 2023)...............................................................................................26

16417597/4

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **3Twelve** | 3Twelve Ventures Ltd. |
| **Alameda** | Alameda Research Ltd. |
| **BDK** | BDK Consulting Ltd. |
| **Bonham** | Bonham Capital Ltd, an FTX Group related entity. |
| **CFTC Compl.** | *Commodity Futures Trading Comm'n v. Bankman-Fried,* 1:22-cv-10503-PKC (S.D.N.Y. Dec. 21, 2022) |
| **Complaint** | *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§105, 544, 547, 548 and 550, and Del Code Ann. Tit. 6 §1304 and to Disallow Claims Pursuant to 11 U.S.C. § 502*, filed in Adv. Proc. No. 23-10585 |
| **Cottonwood** | Cottonwood Grove Ltd, an FTX Group related entity. |
| **Darren** | Jing Yu "Darren" Wong |
| **Debtors** | FTX Trading Ltd. and each of its affiliated debtors and debtors in possession in the Main Case |
| **D.I.** | Docket number of filings in the Main Case and adversary proceedings |
| **Ellison** | Caroline Ellison |
| **First Day Decl.** | *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], filed on November 17, 2022 |
| **FTX.com** | The trade name for the business conducted by FTX Trading Ltd. |
| **FTX Group** | The collection of Debtor and non-Debtor entities described in footnote 4 of the Complaint |
| **FTX Insiders** | Samuel Bankman-Fried, Caroline Ellison, Nishad Singh, and Zixiao "Gary" Wang |
| **FTX.com TOS** | FTX Trading Ltd Terms of Service dated 13 May 2022 |
| **FTX.US** | The trade name of West Realm Shire Services, Inc., which operated the cryptocurrency exchange founded by Messrs. Bankman-Fried, Singh and Wang to provide cryptocurrency trading services to U.S. customers |
| **FTX.US UA** | FTX.US User Agreement dated 16 September 2022 |
| **Kevin** | Huy Xuan "Kevin" Nguyen |
| **Lesley** | Lesley Burgess |
| **Main Case** | The jointly administered chapter 11 cases pending before the United States Bankruptcy Court for the District of Delaware under lead Case No. 22-11068 |
| **Matthew** | Matthew Burgess |
| **Michael** | Michael Burgess |

| | |
|---|---|
| **Plaintiffs** | FTX Trading Ltd and West Realm Shire Services, Inc. |
| **Salameda** | Salameda Ltd, an FTX Group related entity. |
| **SBF** | Samuel Bankman-Fried |
| **SBF Criminal Case** | *United States of America v. Samuel Bankman-Fried,* 1:22-cr-00673-LAK |
| **SEC Compl.** | *Sec. and Exch. Comm'n v. Bankman-Fried,* 1:22-cv-10794-PKC (S.D.N.Y. Dec. 21, 2022) |
| **Singh** | Nishad Singh |
| **Wang** | Zixiao "Gary" Wang |

x

Defendants Michael Burgess, Huy Xuan "Kevin" Nguyen, Jing Yu "Darren" Wong, Matthew Burgess, Lesley Burgess, 3Twelve Ventures Ltd., and BDK Consulting Ltd., (collectively, the "**Defendants**") file this memorandum of law in support of their concurrently filed motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7012, to dismiss all claims asserted against the Defendants in the Complaint. Pursuant to Federal Rule of Bankruptcy Procedure 7012, the Defendants do not consent to entry of final orders or judgments by the Bankruptcy Court in this adversary proceeding.

## INTRODUCTION

Until its "stunning collapse" in November 2022, FTX was the golden child of the cryptocurrency scene and widely praised as one of the most stable companies in a volatile and loosely regulated market. In November of 2022, media reports of financial weakness created a frenzy among FTX.com and FTX.US customers, who collectively sought to withdraw billions of dollars from their accounts. Unable to fulfill the withdrawal requests, FTX filed for bankruptcy, and allegations that certain members of FTX's leadership team, particularly SBF, had "misappropriated" customer funds from the international cryptocurrency exchange began to spread. It was, by all accounts, a "stunning collapse."

In an attempt to recoup as much value as possible from the chaos of the FTX collapse, the Debtors have filed a flurry of adversary proceedings. Each of those complaints, including the one filed against the Defendants in this proceeding, contain the same general allegations regarding fraudulent activities by members of the FTX leadership team, with respect to FTX.com and that entity's customers, and broadly paints the entire FTX enterprise with the same patina of fraud. Even if the allegations that individual insiders engaged in certain fraudulent or criminal practices prove to be true, that does not mean that *all* business dealings by entities in the FTX Group were also fraudulent. The Defendants in these proceedings were

1

not part of the leadership team and as such, any allegations against the leadership team are entirely irrelevant to the Complaint and should not be given any weight.

The Defendants, in this case, were customers who either withdrew funds from their own FTX accounts or continued to trade on the exchange in the ninety days leading up to the petition date. The Plaintiffs seek to claw back those funds as fraudulent or preferential transfers under sections 548 and 547 of title 11 of the United States Code, 11 U.S.C §§ 101–1532 (the "**Bankruptcy Code**") and section 1304 of title 6 of the Delaware Code (the "**Delaware Code**"). The Complaint, however, fails to state a claim for relief for several reasons.

*First*, the Plaintiffs' claims fail as the Plaintiffs have no enforceable interest in the funds they seek to recover. Despite the clear and unambiguous language of the FTX.com TOS and the FTX.US UA, stating that the ownership of the digital assets remained at all times with the customers and did not transfer to FTX.com or FTX.US, and as has now been widely reported, the FTX customers were the victims of mass misappropriation of their funds. There is no dispute that the FTX customers—and specifically the Defendants here—were the victims of this massive fraud and misappropriation of billions of dollars of their assets, in violation of the FTX.com TOS and FTX.US UA. Nevertheless, since the withdrawn funds are the property of the Defendants, and not the property of FTX.com or FTX.US, the assets are not a part of the Debtors' estate, so the Plaintiffs cannot obtain avoidance of transfers on the grounds of actual fraud, preferential transfers, return of the transferred funds under 11 U.S.C. § 550, or disallowance of claims under 11 U.S.C. § 502.

*Second*, to the extent the Plaintiffs are attempting to allege "actual" fraud—that is, that FTX.com and FTX.US actually intended to hinder, defraud, and delay their creditors by permitting the customer withdrawals, in order to prosecute a claim based on actual intent to hinder, delay, or defraud a creditor, the Plaintiffs must show that the alleged fraudulent intent is related to the transfers sought to be avoided.  Here, none of the fraud allegations in the

2

Complaint relate to the transfers made to Defendants in connection with the customer withdrawals.    Instead, the fraud allegations concern the FTX Insiders' fraudulent misappropriation of funds from FTX.com. The Complaint likewise fails to allege sufficient "badges of fraud" necessary to raise a plausible inference of fraud.

*Third*, the Plaintiffs have failed to plead due diligence, prove the existence of an antecedent debt, and provide any factual evidence that the Debtors were insolvent at the time of the transfer.

*And fourth*, Plaintiffs' preference and state law avoidance claims fail because the "safe harbor" under section 546(e) of the Bankruptcy Code bars them as they cover securities or commodities trades made pursuant to securities or commodities contracts. The safe harbor bars all avoidance actions, including those under state law, for transfers that are made by, to, or for the benefit of a financial participant made in connection with a securities contract. The customer withdrawals from FTX.com and FTX.US made in connection with the applicable terms of service fall within those requirements.

For these and all the other reasons herein, the Defendants respectfully request that the Court dismiss the Plaintiffs' Complaint in Adv. Pro. No. 23-50585 with prejudice.

## FACTUAL BACKGROUND

## I.    Overview of Alameda, FTX.com, and FTX.US.

In or around October 2017, SBF and Wang co-founded Alameda, a quantitative trading firm specializing in crypto assets. *See* SEC Compl. ¶ 15.[2] Alameda was a "crypto hedge fund" with a diversified business trading and speculating in digital assets and related loans and securities for the account of its owners, Messrs. SBF (90%) and Wang (10%).  *See* First Day Decl. at ¶ 22.

---

[2]  A copy of the *SEC Compl.* is attached to the *Declaration of Tara C. Pakrouh in Support of Defendants' Brief in Support of Defendants' Motion to Dismiss the Complaint* at [D.I. 24] (the "Pakrouh Declaration") as Ex. 3.

In May of 2019, SBF, Wang, and Singh launched FTX.com, a centralized digital asset exchange organized in Antigua. FTX.com offered trading in a large variety of digital assets, including digital assets such as bitcoin, ether, tether and others. The FTX.com platform was not available to U.S. users. FTX.US (created shortly after FTX.com) offered trading in a similar variety of digital assets for U.S. customers. The FTX.com platform "grew quickly since its launch to become one of the largest cryptocurrency exchanges in the world." First Day Decl. at ¶ 35. At its height, it claimed to have millions of registered users and approximately $15 billion in assets. *Id.*

In November of 2022, the FTX Group experienced a "stunning collapse." *See* D.I. 1242-1 at p. 1. On November 10, 2022, FTX.com halted all trading and withdrawals, and SBF announced that Alameda was being wound down. *See* CFTC Compl. at ¶ 107.[3] The same day, SBF resigned as CEO of FTX.com and ceased to be a majority owner of FTX.com and Alameda, authorizing the appointment of an independent CEO and the filing of Chapter 11 bankruptcy proceedings. On November 11, 2022, the Debtors filed their Chapter 11 cases. *See* First Day Decl. at ¶ 40.

In the time since the Debtors filed for Chapter 11 protection, it has been revealed that the FTX Group engaged in mass fraud and misappropriation of FTX Group customer assets. *See* CFTC Compl. at ¶ 3; SEC Compl. at ¶ 2.

## II.    Customers Agreed to FTX.com Terms of Service in Connection with Their Activity on the FTX.com Platform.

Customers or users who wished to use the FTX.com platform did so in reliance on the representations made to them in the FTX.com TOS.[4]  When customers created accounts with FTX.com, they were required to check a box that binds them to the FTX.com TOS. *See, e.g.,* Hr'g. Tr. 1908:10, *United States v. Bankman Fried*, 22cr-00673 (S.D.N.Y. 2022) (the "**SBF**

---

[3] A copy of the CFTC Compl. is attached to the Pakrouh Declaration as Ex. 4.

[4] A copy of the FTX.com TOS is attached to the Pakrouh Declaration as Ex. 1.

**Criminal Trial Hr'g. Tr.**").[5] Each of the Defendants (and indeed every customer) checked this box in order to have an account with FTX.com. The FTX.com TOS are accepted at the inception and creation of an account and therefore create a binding contract between the customers and FTX.com.

The FTX.com TOS were exhibited in the SBF Criminal Case where it was "undisputed that the relationship between FTX and its customers was governed by the [FTX.com TOS]". *See* Motion in Limine Letter addressed to the Honorable Lewis A. Kaplan from Mark S. Cohen (Oct. 12, 2023) (*United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK) (the "**Letter Motion in Limine**"), at p. 2.[6]  Under the clear and unambiguous language of the FTX.com TOS, title to the digital assets on the FTX.com platform remained at all times with the customer and did not transfer to FTX.com. Digital assets held in customer accounts expressly were **not** the property of and could **not** be loaned to FTX.com or any of the affiliated Debtors. *See* SBF Criminal Trial Hr'g. Tr., at 1963:10-12. ("our terms of service make it very clear that when a user deposits assets onto the exchange, those assets continue to belong to the user."); *Id.* at 1904:13 ("those funds belongs to the customers and does not belong to [FTX.com]").

The FTX.com TOS expressly state that all digital assets are held in a customer's account on the following basis:

> (A)   **Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading.** As the owner of Digital Assets in your Account, you shall bear risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.
>
> (B)   **None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.**
>
> (C)   **You control the Digital Assets held in your Account.** At any time, subject to outages, downtime, and other applicable policies (including the [TOS]), you may withdraw your Digital Assets by sending them to a different block chain address controlled by you or a third party.

---

[5] A copy of the SBF Criminal Trial Hr'g. Tr. is attached to the Pakrouh Declaration as Ex. 7.

[6] A copy of the Letter Motion in Limine is attached to the Pakrouh Declaration as Ex. 6.

16417597/4

FTX.com TOS at § 8.2.6 (emphasis added).

Accordingly, the FTX.com TOS clearly and unambiguously provide that a customer can redeem all or part of any digital asset held in the customer's account at any time. *See* SBF Criminal Trial Hr'g. Tr., at 1942:10-13 ("they are kept in separate accounts . . . so that if FTX or FDM has a bankruptcy event, **customer assets, which belongs to the customer, does not belong to FTX, will be returned to customers**.") (emphasis added).

### III.   Customers Agreed to FTX.US User Agreement Terms in Connection with their Activity on the FTX.US Platform.

Similar to the FTX.com TOS, customers or users, from the U.S., who wished to use the FTX.US platform did so in reliance on the representations made to them in the FTX.US UA (together with the FTX.com TOS, the "**TOS**").[7]   Again, under the clear and unambiguous language of the FTX.US UA, title to cryptocurrency represented in the customer's account remained at all times with the customer and did not transfer to FTX.US.

The FTX.US UA expressly states that all cryptocurrency assets are held in a customer's account on the following basis:

> "Title to cryptocurrency represented in your FTX.US Account **shall at all times remain with you and shall not transfer to FTX.US**. . . . FTX.US does not represent or treat assets in your FTX.US Account as belonging to FTX.US."

FTX.US UA at § 6 (emphasis added).

Accordingly, the FTX.US UA again clearly and unambiguously provides that the title to the assets held in a customer's account will remain with the customer and will not transfer to FTX.US.

---

[7] A copy of the FTX.US UA is attached to the Pakrouh Declaration as Ex. 2.

**IV.**    **The Defendants Were Customers and Employees of the FTX Group.**

The Complaint seeks avoidance and recovery of transfers against Michael Burgess, Huy Xuan "Kevin" Nguyen, Jing Yu "Darren" Wong, Matthew Burgess, Lesley Burgess, 3Twelve Ventures Ltd., and BDK Consulting Ltd.

**A.**    **Michael Burgess**

Michael was originally engaged by Salameda as a consultant, to work in the area of community growth and management. In July or August of 2020, Michael's title was changed to Head of Partnerships. Throughout 2021, Michael signed additional consulting agreements with FTX.com, FTX.US and Cottonwood, however his role and duties within the FTX Group remained the same throughout his engagement with each entity. In November of 2021, Michael's consulting agreements were terminated.

**B.**    **Huy Xuan "Kevin" Nguyen**

On July 15, 2020, Kevin signed an employment agreement with Salameda, to work as a business development representative.  In November of 2021, Kevin's employment agreement with Salameda was terminated.

**C.**    **Jing Yu "Darren" Wong**

On June 21, 2019, Darren signed an employment agreement with Bonham. On June 22, 2020, Darren signed an additional employment agreement with Cottonwood. Darren's role with both companies consisted primarily of business development and partnership activities. By December of 2021, Darren was not involved with Bonham, Cottonwood or the FTX Group, having substantially ceased his employment.

**D.**    **Matthew Burgess**

Matthew was engaged by Salameda as an independent contractor, pursuant to a contractor agreement dated March 22, 2021, to work in customer service and support.  Matthew was moved to the role of Customer Support Manager pursuant to a consultancy agreement with Salameda dated January 1, 2022.

7

### E.    Lesley Burgess

Lesley is the mother of Michael and Matthew and is the registered owner of an account on FTX.com. Lesley would instruct Matthew or Michael to withdraw money from her FTX.com account when needed. Lesley's only interaction with FTX.com was as a customer.

### F.    3Twelve Ventures Ltd.

3Twelve was incorporated in the British Virgin Islands on September 29, 2021. Michael, Darren, and Kevin are the registered directors and shareholders of 3Twelve. 3Twelve was used to invest in early-stage venture capital cryptocurrency companies. The majority of the investments and expenses for 3Twelve were paid out of Michael, Darren and Kevin's FTX.com and FTX.US accounts. 3Twelve's only interaction with FTX.com and FTX.US was as a customer.

### G.    BDK Consulting Ltd.

BDK was incorporated in Hong Kong on January 11, 2022. Michael, Darren, and Kevin are the founding members and shareholders of BDK.  BDK operated a prop trading firm referred to as Cantor, which traded with Kevin, Michael and Darren's personal cryptocurrency. Cantor traded through the FTX.com and FTX.US platforms. BDK's only interaction with FTX.com and FTX.US was as a customer.

## V.    The FTX Group Files for Chapter 11 Bankruptcy.

On November 11 and 14, 2022, the FTX Group filed voluntary Chapter 11 petitions on an emergency basis. Compl. ¶ 15. In his first-day declaration, the Debtors' CEO John J. Ray III testified the bankruptcy filing occurred immediately following the Securities Commission of the Bahamas's seizure of non-Debtor FTX Digital Markets Ltd.'s assets. *See* First Day Decl., at ¶ 42.[8]

---

[8] He also testified there was pervasive corporate failures at every level, particularly with respect to cash management and financial reporting.  *Id.* at ¶ 50–58.

The Plaintiffs filed their Complaint against the Defendants on September 21, 2023. The Plaintiffs seek to avoid all transfers resulting from the Defendants-customers' withdrawals from their own FTX accounts prior to the petition date, s*ee* Adv. 23-50585 D.I. 1, on the grounds that they were actual fraudulent transfers, Compl. ¶¶ 62-65, 66-70 (Counts I and II), are recoverable preferential transfers, Compl. ¶¶ 71-82, 83-94 (Counts III and IV), that all avoided payments to Defendants must be returned, Compl. ¶¶ 95-97 (Count V), and all claims held by Defendants against any Debtor should be the disallowed pending their return of any avoided transfers ¶¶ 98-100 (Count VI). Despite Plaintiffs' attempt to capitalize on the wrongdoing that happened at FTX, including at the Plaintiff companies themselves, the Plaintiffs' Complaint fails to state a claim for relief.

## LEGAL STANDARDS

When presented with a Rule 12(b)(6) motion to dismiss, a court is guided by two "working principles" in evaluating the sufficiency of the factual allegations in a complaint. *Liquidation Trust v. Uphold HQ Inc. (In re Cred Inc.)*, 650 B.R. 803, 812-13 (Bankr. D. Del. 2023) (citations omitted).

"First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 813 (citations omitted). Although well-pleaded facts should be accepted as true, a court need not accept "'unsupported conclusions and unwarranted inferences,' or 'a legal conclusion couched as a factual allegation,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted), or "allegations that are contradicted by other allegations in the [complaint]." *Talley v. Christiana Care Health Sys.*, 2018 WL 4938566, at *5 n.4 (D. Del. Oct. 11, 2018) (citations omitted).  Moreover, the court may consider "'documents incorporated into the complaint by reference and matters of which a court may take judicial notice[,]'" *Off. Comm. of Unsecured*

*Creditors of Champion Enters. Inc. v. Credit Suisse, (In re Champion Enters., Inc.)*, 2010 WL 3522132, at *4 n.7 (Bankr. D. Del. Sept. 1, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), and need not accept as true allegations in the complaint contradicted by such documents. *See James Cable, LLC v. Millennium Digital Media Sys., LLC (In re Broadstripe, LLC)*, 435 B.R. 245, 254 n.31 (Bankr. D. Del. 2010); *Byers v. Intuit, Inc.*, 2009 WL 948651, at *2 (E.D. Pa. Mar. 18, 2009), *aff'd, 600 F.3d 286*; *Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, 1980 WL 1057, at *1 (D. Del. Oct. 23, 1980).

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *In re Cred Inc.*, 650 B.R. at 813 (citations omitted). For claims that are not based on alleged fraud, the court must consider whether the complaint satisfies the pleading requirements of Fed. R. Civ. P. 8(a)—*i.e.*, whether the facts alleged in a complaint are sufficient to show that a plaintiff has a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted).  Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that 'entitlement with its facts.'" *Parkell v. Lyons*, 2019 WL 1435885, at *1 (D. Del. Mar. 31, 2019) (citations omitted).  A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a plaintiff bears the burden of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For claims based on alleged fraud, the court must consider whether the complaint satisfies "Rule 9(b)'s more rigorous pleading requirement," *Purpura v. JP Morgan Chase*,

10

2018 WL 1837952, at *9 (D.N.J. Apr. 18, 2018); *see also Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, 2018 WL 2759301, at *6 (Bankr. D. Del. June 6, 2018), under which a plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also Miller v. SWZ Fin. II, LLC (In re United Tax Grp., LLC)*, 2018 WL 1135496, at *2, 8-9, n.55 (Bankr. D. Del. Feb. 28, 2018) (finding allegations related to fraudulent conveyance claims insufficient to satisfy Rule 9(b)); *Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) ("Federal Rule of Civil Procedure 9(b) requires those asserting fraudulent transfer claims in bankruptcy proceedings to plead them with specificity."); *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 699 (Bankr. D. Del. 2005) (granting motion to dismiss because "[o]ther than merely identifying the allegedly fraudulent transfers . . . the Complaint fails to allege with [Rule 9(b)] specificity any facts in support of the fraudulent transfer claim."). "[B]oilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Burch v. Opus, L.L.C. (In re Opus E., L.L.C.)*, 480 B.R. 561, 573 (Bankr. D. Del. 2012) (citation omitted); *see also Symonies v. Sobol (In re Sobol)*, 545 B.R. 477, 500 (Bankr. M.D. Pa. 2016) (dismissing complaint because plaintiff's claim was only supported by "a conclusory statement with no supporting factual allegations").

Moreover, in evaluating a motion to dismiss, a court can and should consider not only the allegations of the complaint, but also any documents specifically referenced in or attached to the complaint and matters of public record.  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) *abrogated on other grounds, Humana, Inc. v. Indivior, Inc.,* , 2022 WL 17718342, at *1 (3d Cir. Dec. 15, 2022); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).  A court may also consider "an undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (citation omitted); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (stating a court may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case") (citation omitted); *Indeck Maine Energy, L.L.C. v. ISO New England Inc.*, 167 F. Supp. 2d 675, 678-79 (D. Del. 2001); *In re Sportco Holdings, Inc.,* 2021 WL 4823513 at *11 (Bankr. D. Del 2021).

## ARGUMENT

I.    **The Complaint Should be Dismissed in Its Entirety Because the Named Plaintiffs Have No Enforceable Interest in the Funds They Seek to Recover.**

Plaintiffs' actual fraudulent transfer (Counts I and II) and preference claims (Counts III and IV) fail to state a claim for relief against the Defendants because Plaintiffs have not established an enforceable interest in the transferred property. At the time when the Defendants traded through their individual and affiliated corporate FTX.com and FTX.US exchange accounts, they entered into the FTX.com TOS which, as detailed above, provide that the digital assets are owned and controlled by the customer—and not FTX.com or any of the affiliated Debtors.

The FTX.com TOS constituted the agreement between the customers and FTX.com and applied to the customers' use of the platform to transact in Digital Assets. *See* SBF Criminal Trial Hr'g. Tr., at 1908:9-15.  Digital Assets are defined in the FTX.com TOS as "**BTC, ETH, FTT and any other digital asset, cryptocurrency, virtual currency, token, leveraged token, stablecoin, tokenised stock, volatility token, tokenised futures contract, tokenised option or other tokenised derivatives product that is supported by and made available from time to time to transact in using the Platform.**"[9]

---

[9] FTX.com TOS, at Schedule 1, § 1.1 ("Digital Assets") (emphasis added).

As a predicate to avoiding any transfer for actual or constructive fraud or a preferential transfer, a trustee or debtor-in-possession (*i.e.*, the party bringing the suit) must first establish that the debtor (*i.e.*, the individual or entity whose estate is at issue) had an enforceable, and not merely transient, interest in the transferred property. *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of *an interest of the debtor* in property . . .") (emphasis added); 11 U.S.C. § 544(a) ("The trustee shall have . . . the rights and powers of, or may avoid any transfer of *property of the debtor* . . .") (emphasis added).

Since these assets are the property of the customer, and not the property of FTX.com or FTX.US, the assets are not a part of the Debtors' estate pursuant to 11 U.S.C. § 541. *See also Begier v. Internal Revenue Serv.,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (noting that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" from the bankruptcy estate); *see also Halperin v. Moreno (In re Green Field Energy Servs., Inc),* 2018 WL 6191949, at *37-38 (Bankr. D. Del. Nov. 28, 2018)*; Kitchen v. Boyd (In re Newpower),* 233 F.3d 922, 929-31 (6th Cir. 2000)*; Snyder v. Biros (In re U Lock, Inc.),* 2023 WL 4678609, at *9 (Bankr. W.D. Pa. July 21, 2023)*; Harden v. Harrison (In re Harrison),* 627 B.R. 832, 839 (Bankr. E.D. N.C. 2021).

The terms of use *In re Celsius Network LLC*, 642 B.R. 497 (Bankr. S.D.N.Y. Sept. 1, 2022) (**"Celsius"**), although the antithesis of the terms in this matter, show that when a court looks at whether or not assets are the property of the company or the individual, the terms are the starting point. In *Celsius,* the terms of use explicitly stated that in exchange for the "opportunity" to earn rewards on assets, users transfer "all rights and title" of their cryptocurrency assets to Celsius including the right to "pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use" any amount of the cryptocurrency "for

any period of time" and "without retaining in Celsius' possession and/or control a like amount of [cryptocurrency] or any other monies or assets, and to use or invest such [cryptocurrency] at Celsius' full discretion." Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions at ¶ 5, *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) [D.I. 23] (the **Celsius First Day Decl.**").[10]

Unlike in *Celsius,* in this case, the FTX.com TOS state clearly that the Plaintiffs had no right to any of the assets and as such are unable to bring a claim pursuant to the Bankruptcy Code.  FTX.com TOS at § 8.2.6; FTX.US UA at § 6; *see also* SBF Criminal Trial Hr'g. Tr., at 191:6-7 ("when a user deposits their assets onto the exchange, they continue to own those assets.").  *Cf. In re Voyager Digital Holdings, Inc.*, 2022 WL 3146796, at *2-3 (Bankr. S.D.N.Y. Aug. 5, 2022) (agreeing with the debtors that funds held in "FBO" accounts were not property of the debtors' estates because debtors' customers placed their funds in account designated as FBO accounts; therefore, they were held "FBO" and were not property of the estate); SBF Criminal Trial Hr'g. Tr., at 1903:5-7 ("So fiat, it would be transferred into what we call FBO bank accounts held by FTX at various financial institutions and, again, separated from FTX's own proprietary assets.").

Thus, neither FTX.com nor FTX.US have any rights against the Defendants or their property pursuant to the Bankruptcy Code.

Because they have no interests in the funds they seek to recover, the Plaintiffs cannot obtain avoidance of transfers on the grounds of actual fraud (Counts I–II), preferential transfers (Counts III–IV), return of the transferred funds under 11 U.S.C. § 550 (Count V), or disallowance of claims under 11 U.S.C. § 502 (Count VI).  Accordingly, the Complaint should be dismissed in its entirety.

---

[10] A copy of the Celsius First Day Decl. is attached to the Pakrouh Declaration as Ex. 5.

II.   **Counts I and II Should be Dismissed Because the Plaintiffs' Actual Fraudulent Transfer Claims Fail to State a Claim for Relief Against the Defendants.**

The Plaintiffs' actual fraudulent transfer claims (Counts I and II) fail to state a claim for relief against Michael because the purported fraudulent scheme that Plaintiffs allege in regard to the FTX Insiders do not relate to the transfers alleged in the Complaint, and Plaintiffs have not adequately alleged, and cannot allege, sufficient "badges of fraud" to state such a claim under governing law.

In order to plead a claim for avoidance of actual fraudulent transfers under both section 548(a)(1)(A) of the Bankruptcy Code and section 1304 of title 6 of the Delaware Code, Plaintiffs must allege facts establishing that the challenged transfer was made with "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A); *see also PennySaver USA Publ'g, LLC v. OpenGate Capital Mgmt., LLC (In re PennySaver USA Publ'g, LLC)*, 602 B.R. 256, 270 (Bankr. D. Del. 2019) (analyzing actual fraudulent claims under the Bankruptcy Code and under Delaware law together, and noting that "'[t]he elements for avoidance of a fraudulent conveyance under Delaware law are essentially identical to those of section 548(a)(1)(B)'").

In addition, Plaintiffs' actual fraudulent transfer claims must satisfy the heightened pleading standards of Rule 9(b). *See In re Cred Inc.*, 650 B.R. at 834. Rule 9(b) requires a plaintiff to "plead with particularity the 'circumstances' of the alleged fraud." *Our Alchemy, LLC  v. AnConnect, LLC* (*In re Our Alchemy), LLC*, 2019 WL 4447545, at *5 (Bankr. D. Del. Sept. 16, 2019) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 747 F.2d 786, 791 (3d Cir. 1984)).

Fraudulent transfer claims under section 548(a)(1)(A) are typically pleaded through allegations that a challenged transfer bore "badges of fraud" that evince fraudulent intent. *In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009). The "badges of fraud" that courts often refer to include: "(1) the relationship between the debtor and the transferee; (2)

15

consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction." *Id.* Pleading a single badge of fraud is insufficient; rather, a "confluence of several in one transaction" is generally required. *Id.*

Courts routinely dismiss actual fraudulent transfer claims where, as here, a plaintiff makes inadequate badges of fraud allegations. *See, e.g.*, *Trib. Co. Fraudulent Conv. Litig. v. Citigroup Global Mkts. (In re Trib. Co. Fraudulent Conv. Litig.)*, 10 F.4th 147, 162, 171 (2d Cir. 2021) (finding the "district court correctly held that the Trustee failed to plead "badges of fraud" sufficient to raise a strong inference of actual fraudulent intent"); *In re Fedders*, 405 B.R. at 545-46 (dismissing actual fraud claim where plaintiff only pleaded insolvency).

The Plaintiffs' allegations fall far short of these requirements.  In a nutshell, the Plaintiffs allege that SBF and other FTX insiders orchestrated a scheme to misappropriate funds from customer accounts at FTX.com; and as public reports questioned the Debtors' liquidity, FTX.com and FTX.US customers withdrew their investments from the exchanges. Compl. ¶¶ 10, 38–48. The fraud allegations that are in the Complaint are misdirected and relate to transactions distinct from the customer withdrawals.

> In prosecuting a fraudulent transfer claim based on actual intent, it is typically not sufficient to show that the debtor intended to defraud someone and the debtor also made a transfer.  Just because a debtor is involved in a fraudulent scheme does not mean that every transfer made by that debtor is made with fraudulent intent.  In order to prosecute a claim based on actual intent to hinder, delay, or defraud a creditor, the plaintiff must show that the alleged fraudulent intent is *related to the transfers* sought to be avoided.

*Rollaguard Sec., LLC v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895, 918 (Bankr. S.D. Fla. 2018) (emphasis added). Here, none of the fraud allegations in the Complaint relate to the transfers made in connection with the customer withdrawals even though these are the transfers Plaintiffs seek to avoid. Compl. ¶¶ 63, 68.  Instead, Plaintiffs'

fraud allegations concern the FTX Insiders' fraudulent misappropriation of FTX.com funds. Compl. ¶¶ 38–48.[11] That is insufficient. Therefore, it is not surprising that the Complaint fails to plead facts showing the presence of "badges of fraud" indicative of fraudulent intent, much less a "confluence of several" badges. *In re Fedders*, 405 B.R. at 545-47 (dismissing avoidance claims under Bankruptcy Code section 548(a)(1)(A) and state law Uniform Fraudulent Transfer Act); *see also United Tax Grp. v. Tax Help MD Inc. (In re United Tax Grp.)*, 2018 WL 1135496, at *10, 12 (Bankr. D. Del. Feb. 28, 2018) (explaining that "Plaintiffs must plead sufficient facts to support badges of fraud" and holding that proposed claims for actual fraudulent conveyance were insufficiently pled).

*Insolvency*. Plaintiffs fail to allege facts supporting their conclusory assertion that they were insolvent at the time of, or rendered insolvent by, the customer withdrawals. Compl. ¶ 57; *see In re United Tax Grp.*, at *10 (rejecting "conclusory statement of insolvency"). "Insolvency is determined at the time of conveyance." *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 WL 4261168, at *11 (Bankr. D. Del. Sept. 6, 2019). Here, the challenged transfers occurred at various times prior to the petition date. The Complaint is devoid of any allegation that Plaintiffs were insolvent at the time of, or rendered insolvent by, the customer withdrawals. Instead, Plaintiffs make the irrelevant, conclusory assertion that Alameda "could not repay what it owed" in "early September 2022." Compl. ¶ 46. That is patently insufficient. *See In re F-Squared Inv. Mgmt., LLC* at *11 (finding insufficient "conclusory statement" and a mere "recitation of the word 'insolvency'" without "any specific allegations" supporting alleged insolvency); *Carickhoff v. Cantor (In re Live Well Fin., Inc.)*, 2023 WL 4025816, at *8 (Bankr. D. Del. June 14, 2023) (dismissing constructive fraud claim for failure to adequately

---

[11] To the extent Plaintiffs rely on *Drivetrain, LLC v. X. Com., Inc.*, 2023 WL 1804627, at *3 (Bankr. D. Del. Feb. 7, 2023) to excuse their deficiencies and failure to plead the badges of fraud, that case is inapposite. There, the *Drivetrain* court found fraudulent intent was pled because the "goal" of the debtor-founder's actions "was to trick investors into believing the company was" successful and the "contracts [he entered the debtor into], therefore, served no other purpose but 'to allow [the founder] and his associates to perpetuate fraud on Debtor's investors and Board.'" *Id.* *3. Here, the Defendants simply withdrew funds from their own accounts.

plead facts regarding the debtor transferor's financial condition at the time of the challenged transfer); *Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics), Inc.,* 2021 WL 5016127, at *5 (Bankr. D. Del. Oct. 28, 2021) (same). Beyond Plaintiffs' irrelevant insolvency allegation, Plaintiffs allege insolvency in a conclusory fashion. Compl. ¶ 57. A plaintiff must do more than simply recite the statutory requirements. *In re Insys Therapeutics, Inc,* 2021 WL 5016127, at *5 (dismissing fraudulent transfer claim where "the complaint merely recites the language of [Section 548]"). The Plaintiffs' failure to plead insolvency at the time of the transfers is fatal to their claims. *See, e.g. Burtch v. Huston (In re USDigital, Inc.),* 443 B.R. 22, 39 (Bankr. S.D.N.Y 2011) (dismissing fraudulent transfer claim because the plaintiff "failed to provide any support to the factual allegations that [the debtor] was insolvent or was rendered insolvent" at the time of the transfer).

     ***Relationship Between Debtor and Transferee***.   "In determining the closeness of the relationship, courts have found the essential question is 'the degree to which the transferee is able to exert control or influence over the debtor.'" *Hill v. Hill* (*In re Hill*), 342 B.R. 183, 199 (Bankr. D.N.J. 2006) (citation omitted).  Here, there is no allegation that Matthew or Michael was a director or officer of any Plaintiff entity, that the Plaintiffs and Matthew or Michael were under common control, or that Matthew or Michael otherwise controlled any Plaintiff.  *Cf.* Compl. ¶¶ 29, 57. Rather, the Complaint acknowledges Matthew was a "customer service" representative of FTX.com and FTX.US.  *Id.* ¶ 29.  As a customer service representative, Matthew did not have control of the debtor. In fact, Matthew's customer withdrawal request was subject to FTX internal protocol—this is evidenced by the Complaint itself. *Id.* ¶ 52 ("large withdrwals [*sic*] need manual review"), *Id.* ¶ 53 (Matthew asked FTX Group employee to "review large crypto withdraws").  This badge has not been sufficiently alleged.  *Cf. In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *5 (Bankr. D. Del. June 19, 2015) (close relationship existed where transfers were made to "officers and members of the Debtor's board"); *In re*

*Zambrano Corp.*, 478 B.R. 670, 692 (Bankr. W.D. Pa. 2012) (finding "close relationship" where both entities were controlled by members of the same family).

   ***Portion of Estate Transferred***.  This badge has roots in examining whether the "entire estate" was transferred by the debtor, not simply whether there was a large proportion transferred. *Otis & Edwards, P.C. v. Barbara* (*In re Otis & Edwards, P.C.*), 115 B.R. 900, 913 (Bankr. E.D. Mich. 1990). The Plaintiffs allege that Michael was paid $73,665,249.00 in connection with his customer withdrawals. The Plaintiffs do not allege what this amount represents in relation to the total value of the Debtors' estates, much less that the funds transferred represented "substantially all" of the Debtors' assets.  *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)* 429 B.R. 73, 92-93 (Bankr S.D.N.Y. 2010) (denying motion to dismiss where "substantially all" assets were transferred for no consideration). Instead, all Plaintiffs do is allege in conclusory fashion that the transfers made in connection with the acquisition occurred "shortly before or shortly after Plaintiffs incurred substantial debts" (Compl. ¶ 57(iv)), but they do not allege what those "substantial debts" were nor attempt to explain what the significance of that timing is for actual fraudulent transfer purposes.

   ***Reservation of Benefits***. The Plaintiffs do not allege, nor could they, that Matthew or Michael reserved any benefits, control, or dominion over the property transferred.  *See also PennySaver USA Publ'g, LLC v. OpenGate Capital Mgmt., LLC (In re PennySaver USA Publishing, LLC)*, 587 B.R. 445, 461, 465 (Bankr. D. Del. 2018).

   ***Secrecy***. The Plaintiffs do not allege that the customer withdrawal was concealed.  In fact, they concede that the customer withdrawal request was subject to FTX internal protocol. Compl. ¶¶ 52, 53.   To the extent the Plaintiffs' contention that "material facts relating to the transfers were concealed" refers to Matthew's customer withdrawal, *Id*. ¶ 57, it is unsupported by any factual allegations.  Matthew disclosed the withdrawals were for "burgs," *id*. ¶ 52, which is an abbreviation of Matthew's, Michael's, and Leslie's last name.  Plaintiff's self-serving

19

typographical correction of the nickname and assignment Michael's nickname does not change that fact. *Id.* Moreover, to the extent the Plaintiffs' contention refers to the FTX Insiders' fraudulent misappropriation of FTX.com funds, it is misdirected and irrelevant. *See Sharp International Corp. v. State Street Bank & Trust Co. (In re Sharp International Corp.),* 302 B.R. 760, 784 (E.D.N.Y. 2003); *In re Rollaguard*, 591 B.R. at 918. The Plaintiffs also allege that "[n]umerous material facts relating to the transfers were concealed," (*Id.* ¶ 68(ii)), but nowhere specify what those supposed facts are, and in any event they have totally disregarded the fact that the withdrawal itself was disclosed to FTX, FTX employees, and FTX specialists. That disclosure negates any suggestion of fraudulent intent.

In short, the Plaintiffs fail to allege the "confluence" of badges of fraud required to adequately allege actual fraudulent intent. *In re Fedders*, 405 B.R. at 545. Accordingly, their claims of actual fraudulent transfers (Counts I and II) should therefore be dismissed for failure to state a claim for relief.

**III.    Counts III and IV Should Be Dismissed in Their Entirety Because the Plaintiffs Failed to Plead Due Diligence in Accordance with Section 547(b).**

As required by 11 U.S.C. § 547(b), the Plaintiffs fail to allege that they undertook any due diligence into the merits of its claims or any potential affirmative defenses. To establish a preference claim, the plaintiff must allege: (1) a debtor-creditor relationship, (2) an antecedent debt, (3) one or more transfers made to the creditor or for the creditor's benefit, (4) an interest by the debtor in the property transferred, and (5) receipt by the creditor of more as a result of the transfer than the creditor would receive in a chapter 7 liquidation. 11 U.S.C. § 547(b). No preference claim may be brought until after the plaintiff undertakes "due diligence in the circumstances of the case and tak[es] into account a party's known and reasonably knowable affirmative defenses under subsection (c)[.]" *Id.* The due diligence requirement has been concluded as an element of a claim. *See Pinktoe Liquidation Trust v Charlotte Olympia Dellal (In Re Pinktoe Tarantula Ltd.)*, 2023 WL 2960894 at *5 (Bankr. D. Del. Apr. 14, 2023). The

16417597/4

plaintiff has the burden of establishing each element of a preference claim pursuant to section 547(g) of the Bankruptcy Code. *See* 11 U.S.C. § 547(g).

In the Complaint, there is no allegation, general or otherwise, that the Plaintiffs performed due diligence as to the TOS. First, prior to the filing of the Complaint, multiple cases against and involving the Plaintiffs have been filed, many of which include references to and/or exhibit the FTX.com TOS and the FTX.US UA. *See, e.g.,* SBF Criminal Trial Hr'g. Tr., at 2914:1-7. It is impossible that the Plaintiffs can allege due diligence was undertaken as to the preference element of transferring a debtor's interest in property, considering the clear and unambiguous language of the FTX.com TOS and the FTX.US UA that should have been available to the Plaintiffs prior to filing the Complaint. If due diligence was completed, the Plaintiffs would have been aware of the argument raised above that the Plaintiffs do not hold any right to claim for property that does not and has not ever belonged to them.

Accordingly, the Plaintiffs failed to plead or allege its compliance with the due diligence requirement under 11 U.S.C. § 547(b) and Counts III and IV should therefore be dismissed in their entirety.

**IV.    Counts III and IV Should Be Dismissed in Their Entirety Because the Plaintiffs Failed to Plead the Creation of An Antecedent Debt in Accordance with Section 547(b)(2).**

In accordance with 11 U.S.C. § 547(b)(2), the Defendants seek to dismiss Counts III and IV on the basis that there is no antecedent debt in whole and particularly with respect to the withdrawal and transfer of cryptocurrency.  To survive a motion to dismiss, a preference complaint must set forth non-conclusory factual allegations specifying the nature of the antecedent debt, the amount of each antecedent debt, the dates of the transfers, which transferee received each transfer, and the amounts of the transfers. *See, e.g., TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post Confirmation Estate),* 305 B.R. 228, 232-33

(Bankr. D. Del. 2004); *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.),* 2016 WL 1599798 at * 3 (Bankr. D. Del. Apr. 18, 2016).

Here, Plaintiffs fail to sufficiently plead a preference claim under section 547(b) of the Bankruptcy Code because the Complaint fails to allege necessary facts concerning the alleged antecedent debt. As discussed below, cryptocurrency is a security (or alternatively a commodity); therefore, there is no payment obligation or debt accruing with respect to the transfer of that property, in turn meaning there is no form of antecedent debt created. *See Miller v. Energy Star Records (In re DA Liquidating Corp.),* 622 B.R. 172, 176-177 (Bankr. D. Del. 2020) ("To survive a motion to dismiss, Trustee must sufficiently plead all elements of a preference, **including an antecedent debt**.") (emphasis added).

*Piazza v. Pacific Maritime Indus. Corp. (In re George G. Sharp, Inc.),* 2022 WL 1714178 (Bankr. S.D.N.Y. May 25, 2022) is instructive. There, the court held contingent obligations were not antecedent debts that were incurred or owed "unless and until the contingencies were triggered and the payment obligations crystalized." *Id.* at *19. A payment obligation cannot arise in the transfer of securities (or commodities) manifesting in the withdrawal of customer funds from **their own accounts**. Compl. ¶¶ 10–13, 59–61.

Further, the Complaint failed to plead 11 U.S.C. § 547(b)(1) in that the transfers alleged in the Complaint were not for the benefit of the Defendants as the transfers merely provided the Defendants' property to them (presumably with a fee payable by the Defendants to the Plaintiffs). As such, the only parties "benefiting" from the transactions were the Plaintiffs. Accordingly, the Plaintiffs' preference claims fail to state a claim and Counts III and IV should be dismissed in their entirety.

## V.   Section 546(e) of the Bankruptcy Code Bars Counts II–IV of the Complaint.

Counts II–IV also fail because they are barred by the "safe harbor" provision in section 546(e) of the Bankruptcy Code. Section 546(e) provides a complete defense to avoidance claims other than those under Section 548(a)(1)(A).[12]  *See* 11 U.S.C. § 546(e).  It provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

"Section 546(e) shields certain securities transactions from avoidance actions for the purpose of promoting stability and finality in the securities markets" and commodities markets. *Kravitz* v. *Samson Energy Co. (In re Samson Res. Corp.)*, 625 B.R. 291, 294 (Bankr. D. Del. 2020) (internal quotation marks omitted). Here, the customer withdrawals that Plaintiffs seek to avoid in Counts II–IV fall within section 546(e) safe harbor.  As explained below, they were "transfer[s] made by or to (or for the benefit of) a . . . financial participant . . . in connection with a securities contract, as defined in section 741(7)[.]"  11 U.S.C. § 546(e).

### A.   The Digital Cryptocurrency Assets Were "Securities".

The cryptocurrency assets that were the subject of the Defendants' and thousands of other customers' purchases and sales were securities. *See Testimony of Chair Gary Gensler*

---

[12] Courts have consistently held that section 546(e) bars all state law claims for fraudulent transfer, regardless of whether such claims are for actual or constructive fraudulent transfer. *See, e.g., Hechinger Inv. Co. of Del v. Fleet Retail Finance Group (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 98 (D. Del. 2002) ("[I]t is clear that Congress has *not* exempted section 544 transfers from section 546(e)."); *Bos. Generating LLC Co. v. Road Poer Mgmt., LLC (In re Bos. Generating LLC)*, 617 B.R. 442, 479 (Bankr. S.D.N.Y. 2020) ("[T]he plain language of section 546(e) . . . provides an exception only for intentional fraudulent transfer claims brought under the Bankruptcy Code and no more."), *aff'd sub nom. Holliday v. Credit Suisse Sec. (USA) LLC*, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021) ("By its plain language, a trustee may not exercise the vested state law intentional and constructive fraudulent conveyance claims to avoid a transfer within the scope of Section 546(e).").

*before the United States House of Representatives Committee on Financial Services*, April 23, 2023, https://www.sec.gov/news/testimony/gensler-testimony-house-financial-services-041823 ("the vast majority of crypto tokens are securities."); *In Securities and Exchange Commission v. Shavers*, 2013 WL 4028182 at * 2 (E.D. Tex. Aug. 6, 2013) (holding that Bitcoin was a security even though it could be used as a currency as well).[13]

### B.   The Customer Withdrawals Were Made in Connection with a "Securities Contract".

The customer withdrawals were made "in connection with a securities contract" within the meaning of 11 U.S.C. § 546(e), which Bankruptcy Code section 741(7) defines broadly to include, among other things, (i) "a contract for the purchase [or] sale . . . of a security," 11 U.S.C. § 741(7)(A)(i), (ii) "any repurchase . . . transaction on any such security," *id.*, and (iii) "any other agreement or transaction that is similar to [such] an agreement." *Id.* at (7)(A)(vii). "Thus, the term 'securities contract' expansively includes contracts for the purchase or sale of securities, as well as any agreements that are **similar** or **related to** contracts for the purchase or sale of securities." *Picard v. Ida Fishman Rev. Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 418 (2d Cir. 2014) (emphasis added).   Under Section 546(e), "[t]his concept is broadened even farther because § 546(e) also protects a transfer that is 'in connection' with a securities contract." *Id.*

---

[13] Alternatively, the digital cryptocurrency assets were commodities. The Southern District of New York recently found Bitcoin was a commodity under different facts and for a different type of cryptocurrency asset. *See Commodity Futures Trading Comm'n v. Gelfman Blueprint, Inc.*, 2018 WL 6320653, at *4 (S.D.N.Y. Oct. 2, 2018) ("Virtual currencies such as Bitcoin are encompassed in the definition of "commodity" under Section 1a(9) of the Act"). Nevertheless, Defendants' section 546(e) defense remains intact. If the cryptocurrency assets are found to be commodities, the withdrawals would then have been made in connection "commodities contract[s]" within section 761(4)'s broad definition, as opposed to securities contracts. The TOS could also be considered "forward contracts", another allowable type of agreement under 101(22)(A), to the extent they relate to the future purchase or sale of commodities. *Cf. In re Magnesium Corp. of America*, 460 B.R. 360, 372 (Bankr. S.D.N.Y 2011). FTX.com (at a minimum) would still be an a "financial participant" because a "commodity contract" (or forward agreement) is a qualifying type of agreement under section 101(22)(A). Further, FTX.com would also fit withing the definition of commodity broker under section 101(5).  In any of these cases, the section 546(e) analysis remains substantially similar, and the Defendants would still be entitled to safe-harbor protection.

In *In re Bernard L. Madoff Inv. Securities LLC*, the Second Circuit found that documents applicable to customers' accounts constituted securities contracts because they established the relationship between the customer and the broker, setting forth, among other things, the terms by which the broker would trade securities for the customer regardless of whether any actual purchases or sales were made. 773 F.3d 411, 418-20 (2d. Cir. 2014). The account documents were, "[o]n their face" agreements by which the broker would 'acquire or dispose of securities' on behalf of its customers, even if such acquisition or disposition never happened due to the Ponzi scheme. *Id.* at 418. Since "the transfers at issue originated with, and could not have been possible but for, the relationship created by" the account documents, the court concluded that they fell "within the statute's broad definition of 'securities contract.'" *Id.* at 418-19.

Here, like in *Madoff*, the customers and Plaintiffs entered into an agreement, the TOS, that both established the relationship between the parties and set forth the terms for trading the cryptocurrency assets. *See* FTX.com TOS, Preamble ("The following terms and conditions of service, together with any other documents expressly incorporated herein [] constitute an agreement between you [] and FTX Trading Ltd . . . and apply to your use of: (A) the Exchange and any Specified Service that may be offered to you by a Service Provider [] as a User to buy, sell, exchange, hold, stake, lend, borrow, send, receive or otherwise transact in [] or list Digital Assets; (B) the FTX Application Programming Interface []; and (C) any other services offered through the FTX website (ftx.com) [] or any Mobile Application[.]"); FTX.US UA, Preamble (same); FTX.com TOS at § 8.3; FTX.US UA at § 6. Indeed, FTX's customers were required to agree to the TOS before they could open an account and trade on the platform. *See* SBF Criminal Trial Hr'g. Tr., at 1908:9-15 ("Q. What are terms of service? A. It is a legal document that sets out the rights and responsibilities of FTX and our users, how they relate to each other for an account on FTX. Q. And as far as you know, did a customer have to agree to the terms

25

of service to open an account? A. Yes."). Further, unlike the customers in *Madoff*, FTX's customers did in fact make trades, thousands of them, each reliant on and governed by the terms of the TOS. Therefore, under the broad language of section 741(7), the TOS are clearly "securities contracts" for purposes of section 546(e) and each purchase or sale a transaction of securities.

### C.    The Customer Withdrawals Were Made by and to "Financial Participants".

The Plaintiffs were "financial participants" for purposes of section 546(e).   The Bankruptcy Code defines a "financial participant" to include "an entity that, at the time it entered into a securities contract, . . . has one or more" securities contracts, commodity contracts, forward contracts, repurchase agreements, swap agreements, or master netting agreements with an aggregate gross dollar value of at least $1 billion in notional or principal amount outstanding, or has "gross mark-to-market positions" of at least $100 million in such securities agreements or transactions, at the time of the securities contract at issue "or on any day during the 15-month period preceding the date of the filing of the petition."  11 U.S.C. §§ 101(22A)(A).  The securities agreements or transactions can be with the debtor or with any other entity. *Id.*; *see also Samson Res.Corp. v. Samson Energy Co. (In re Samson Res. Corp.)*, 2022 WL 3135288, at \*4-5 (Bankr. D. Del. 2022); *Samson Res.Corp. v. Samson Energy Co. (In re Samson Res. Corp.)*, 625 B.R. 291, 298-301 (Bankr. D. Del. 2020).

Here, at a minimum, FTX.com meets the monetary requirement because the trading volume on the FTX exchange, done pursuant to the TOS, totaled an aggregate value exceeding $100 million in mark-to-market positions and $1 billion in face amount.  On its Voluntary Petition, FTX.com listed between $10 and $50 billion of estimated assets and liabilities on a consolidated basis, a large portion of which would consist of the value of its safe harbor contracts. *See* D.I. 1, at No. 15.  Moreover, on various dates in the fifteen-month period prior

to filing, FTX tokens were trading at a volume exceeding the statutory threshold.[14] On its Statement of Financial Affairs, FTX.com even admits that it received $1,015,812,187.16 in gross revenue for 2021 from business alone, which amount would account for only a fraction of the total gross value of all of its securities contracts. *See* D.I. 977, at Part 1. No. 1. Using either aggregate gross dollar or mark-to-market valuation, the Plaintiffs meet and exceed the monetary requirements to be financial participants in the transfers. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 148-49 (S.D.N.Y. 2013) (finding various defendants to be "financial participants" where the notional value of the transactions at issue were in excess of $100 million); *In re Samson Res. Corp.*, 2022 WL 3135288 at *5 (Bankr. D. Del. Aug. 4, 2022) (same).

Further, as discussed above, Plaintiffs entered into securities contracts with the Defendants and thousands of other customers in the form of the TOS, and each of the customer's purchases and sales on the FTX exchange was a securities transaction.

As the customer withdrawals fit the requirements of the section 546(e), and as section 546(e) operates as a complete defense to Counts II–IV, those Counts are barred and should be dismissed.

## VI.    Counts V and VI of the Complaint Should be Dismissed for Failure to Adequately Allege a Primary Violation in Counts I–VI.

Count V of the Complaint, which seeks to recover transferred funds under section 550(a)(1) of the Bankruptcy Code, Compl. ¶¶ 95–97, should be dismissed because, as discussed above, the Plaintiffs have failed to adequately allege facts showing that these transfers are avoidable under sections 544, 547, and 548. *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 750 (3d Cir. 2013) (explaining that

---

[14] *See, e.g.,* Yahoo Finance, FTX Token USD, *https://finance.yahoo.com/quote/FTT-USD/* (last visited Nov. 18, 2023) (the "Historical FTX Trading Data"[attached to the Pakrouh Declaration as Ex. 8) (stating on September 5, 2021, FTX tokens were trading at a volume of 16.67 billion that day). Indeed, John J. Ray III testified SBF claimed that, by the end of 2021, around $15 billion in assets were on the platform. *First Day Decl.* at ¶ 35.

section 550(a)(1) only allows recovery of "property whose transfer has been avoided"); *Allegheny Univ. Health Sci. v. Phila. Health Care Trust (In re Allegheny Health, Educ. & Rsch. Found.)*, 253 B.R. 157, 173 (Bankr. W.D. Pa. 2000) (explaining that section 550(a)(1) only allows recovery "if, and to the extent that, said transfer is successfully avoided"); *In re Daily Bread Winddown, LLC*, 2022 Bankr. LEXIS 3078, at *11 (explaining that section 550 is "not a separate basis for liability" and that to survive a motion to dismiss a claim under section 550 the plaintiff "needs . . . to state a plausible claim to avoid under section 547 or 548").

Similarly, Count VI of the Complaint, Compl. ¶¶ 98–100, which seeks to disallow claims pursuant to section 502(d) of the Bankruptcy Code, should be dismissed because, as discussed above, Plaintiffs have failed to adequately allege facts showing Defendants have received transfers that are recoverable or avoidable. *See In re KB Toys Inc.,* 736 F.3d 247, 249 (3d. Cir. 2013) ("Under § 502(d), a bankruptcy claim can be disallowed if the claimant receives property that is avoidable or recoverable by the bankruptcy estate"); *Giuliano v. Shorenstein Co. LLC (In re Sunset Aviation, Inc.)*, 468 B.R. 641, 651–52 (Bankr. D. Del. 2011) ("Section 502(d) provides that 'the court shall disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title or that is a transferee of a transfer avoidable under section[s] . . . 547, 548, 549 of this title.'").

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

*[Signature Page Follows]*

Dated:  November 20, 2023
      Wilmington, Delaware

**MORRIS JAMES LLP**

/s/ *Tara C. Pakrouh*
_____
Eric J. Monzo (DE Bar No. 5214)
Tara C. Pakrouh (DE Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
       tpakrouh@morrisjames.com

**CHAMBERLAINS LAW FIRM**
Stipe Vuleta (admitted *pro hac vice*)
Lachlan McBride (admitted *pro hac vice*)
Sebastian Brodowski (admitted *pro hac vice*)
Samuel Keys-Asgill (admitted *pro hac vice*)
Level 12, 59 Goulburn Street
Sydney NSW 2000 Australia
Telephone: 02 9264 9111
E-mail: stipe.vuleta@chamberlains.com.au
      lachlan.mcbride@chamberlains.com.au
      sebastian.brodowski@chamberlains.com.au
      sam.keysasgill@chamberlains.com.au

and

Hugh Smith (admitted *pro hac vice*)
Level 8, 224 Bunda Street
Canberra City ACT 2601 Australia
Telephone: 02 6188 3600
E-mail: hugh.smith@chamberlains.com.au

*Counsel to the Defendants*

29

16417597/4